(36 App. Div. 201.)

HAVEY v. KELLEHER et al.

(Supreme Court, Appellate Division, Second Department. January 3, 1899.)

1. TENANCY IN COMMON—PARTITION—MORTGAGE—ASSIGNMENT.
　　A co-tenant of decedent's land is not entitled to charge against it, in partition, the amount of a mortgage thereon which was assigned to him after he had paid it, as administrator, from the estate's funds.

2. SAME—INSURANCE.
　　A co-tenant is not entitled to have money paid for insurance taken out in his name to insure buildings on the land charged against it in partition, since such insurance would protect his interest only.

3. SAME—CLAIMS AGAINST THE ESTATE.

    A co-tenant of decedent's land, who was also administrator of his estate, is not entitled to charge against the land in partition by heirs the amount of claims and judgments against the estate.

4. SAME—CONSTRUCTION OF BUILDINGS.

    Where an administrator erected buildings on decedent's land as a private business venture, without the consent of the heirs, with whom he held as co-tenant, he cannot charge the expense thereof against the land in partition.

5. SAME—ADVANCEMENT BY ADMINISTRATOR.

    The question whether money paid to an heir by an administrator was advanced as part of his share or as a gift cannot be litigated in partition proceedings between them.

6. SAME—VESTED REMAINDERS.

    Where an heir is the owner of an undivided one-fifth of land, subject to dower and the widow's life estate in an undivided four-fifths, the heir and widow are not joint tenants or tenants in common of "a vested remainder or reversion," within Code Civ. Proc. § 1533, prohibiting a sale in partition by persons holding such estate without consent of the owner to the particular estate.

7. SAME—APPEAL—FAILURE TO OBJECT.

    The correctness of a finding as to plaintiff's rights in partition cannot be reviewed when raised for the first time on appeal.

Appeal from special term, Westchester county.

Partition by Catherine F. Havey against Honorah Kelleher, individually and as administratrix of the estate of Michael Kelleher, deceased, and others. Judgment for plaintiff, and defendant Kelleher appeals. Affirmed.

Argued before GOODRICH, P. J., and CULLEN, BARTLETT, HATCH, and WOODWARD, JJ.

Joseph F. Daly, for appellant.

John J. Crennan, for respondent.

GOODRICH, P. J. Michael Kelleher died intestate in February, 1869, leaving, him surviving, his widow, the defendant, and five children, one of whom is the plaintiff. The other four children, since the father's death, died intestate, and without issue. These were Bartholomew, who died in March, 1892; Michael, who died in July, 1879; James, who died in August, 1881; and Sarah, who died in 1869. At the time of his death, Michael, the elder, was seised of two adjoining lots on the southwesterly side of Mechanic street, in the village of New Rochelle, each about 113 by 30 feet. The premises were conveyed to him by L. P. Miller, the southerly one in April, 1864, for $500, and the northerly one in July, 1865, for $550; and of these premises the plaintiff seeks partition. When Kelleher died, the only building on the premises was a frame house on the southerly lot, and a small frame barn, which was subsequently burned down. This lot was subject to a mortgage of $1,000, executed by Michael and his wife to John Morris, and by assignment transferred to the defendant in 1890. The northerly lot was subject to a mortgage of $550, executed by the same parties to Leonard P. Miller. This was satisfied of record in 1881. From the death of Michael, in 1869, down to 1875, and again from 1881 to 1892, the widow occupied the frame dwelling on the southerly lot as a family home. The plaintiff lived

with her until 1886, when she married.   In 1876 the defendant erected a brick dwelling on the front of the northerly lot, and in 1892 a hall on the rear of the two lots, and in 1892, also, a small barn on the southerly lot in place of the one which had been burned.   Previous to the time of his death, Michael had been conducting the liquor business in the frame dwelling, and this business was continued by the widow.   The widow applied for letters of administration, and the petition stated that the personal estate amounted to $100, and the real estate to $2,000.   Since the death of her husband she has collected the rents and income, and paid for the new buildings, and the taxes, assessments, and other charges.   The plaintiff came of age in 1878.   The brick dwelling on the northerly lot was erected during her minority, and the others since her majority.   This action is brought for partition of the premises, and the plaintiff asks an accounting between herself and the defendant.   The defendant, in her answer, alleged that the lots in question, although conveyed to her husband, were paid for with her own money; and that in the belief that she was a joint owner with her husband, and, after his death, sole surviving owner, and in ignorance of the fact that the property had been conveyed to her husband, she built and paid for the brick house, the hall, and the stable, with the knowledge and consent of the plaintiff and the other children, and satisfied liens and charges thereon, all of which expenditures amounted to $18,000; and also paid claims against the husband's estate amounting to $3,000; and that she had conveyed to the plaintiff, without consideration, improved real estate on Church street, valued at $2,900, and advanced to her $3,500.   Of all of these transactions she prayed an accounting. An order was entered directing a reference to hear and determine all the issues, and to take proof of title, and to report as to the propriety of actual partition or sale of the entire premises.

It was alleged in the complaint, admitted in the answer, and found by the referee, that the plaintiff is seised in fee-simple absolute of the entire premises, subject to the defendant's right of dower, and also to her life estate in four undivided fifths, which had descended to the four deceased children.   The general theory upon which the referee based his report was that the defendant was quasi agent of the estate, and as such was to be charged with all the rents or income which she had collected, the amount of which was stipulated between the parties; and to be credited with all payments which were properly a charge against the estate.   He also found as matter of fact that the erection of the new buildings "was in the nature of a business venture, made by the defendant Honorah Kelleher, without the consent of the plaintiff."

| | | |
|---|---:|---:|
| That the defendant had collected rents amounting to | | $9,290 00 |
| That she had paid taxes amounting to | $1,367 67 | |
| The principal and interest of the Miller mortgage | 952 32 | |
| The principal and interest of the Morris mortgage | 2,306 32 | |
| The principal and interest of the Havey mortgage | 2,173 00 | |
| Repairs | 2,008 41 | |
| Insurance | 32 10 | |
| | | 8,839 82 |
| Leaving her indebted to the estate of her husband for | | $450 18 |

The referee also reported in favor of selling the premises instead of partitioning them.

The exceptions of the defendant to the referee's report raise questions which can be more readily understood by an approximate tabulation of her claim, to be compared with the referee's report.

| | | |
|---|---:|---:|
| Amount of rents received...................................... | | $ 9,290 00 |
| By taxes paid..................:.................:.......... | $1,367 67 | |
| The Miller mortgage and interest...................... | 1,019 38 | |
| The Morris mortgage and interest...................... | 2,818 33 | |
| The interest on Havey mortgage...................... | 422 75 | |
| Insurance ........................................... | 971 90 | |
| Repairs ............................................... | 2,620 74 | |
| Claims and judgments against the estate paid by defendant ............................................ | 1,930 20 | |
| Value of new buildings erected, and additions.......... | 6,604 00 | |
| Counterclaim for moneys advanced to the plaintiff...... | 4,326 00 | |
| | | 22,080 97 |
| Balance due the defendant.............................. | | $12,790 97 |

Taking these questions in order, we proceed to discuss them.

The Miller mortgage: This was a lien on the premises at the time of Michael's death. It was paid off with part of the proceeds of the Havey mortgage, which was given by the widow and children in 1881. The referee allowed her interest down to the date of this payment.

The Morris mortgage: This also was a lien at the time of Michael's death. It was paid off in November, 1890, and interest was allowed by the referee to that date. The defendant, however, took an assignment of the mortgage to herself. This was clearly improper, as the mortgage was actually paid out of moneys belonging to the estate, and should have been satisfied of record, instead of being assigned to the defendant.

The Havey mortgage: This was executed in 1881, to raise money to pay off the Morris mortgage, and to provide funds for the erection of the brick building on the northerly lot. It was paid off in 1885, and interest allowed to that date.

The insurance premiums: Although they were paid by the defendant, a large part of them was not allowed by the referee, for the reason that the policies were taken out in the name of the defendant, and technically insured her interest alone, instead of insuring the interest of herself and the children. It is evident that as the defendant was not the owner of the premises the insurance was not valid, and was not an indemnity to the owners, for whom she was assuming to act as agent. Ford v. Knapp, 102 N. Y. 135, 6 N. E. 283. Consequently, the referee was right in refusing to credit her with premiums on any of such policies.

Repairs: These seem to have been paid out of the rents, and, so far as chargeable to the estate, are actually credited to the defendant by the referee.

Claims and judgments against the estate: These are not a charge upon or against the plaintiff, and cannot be allowed, although they might have formed a proper subject of allowance in an accounting of the defendant, as administratrix, before the surrogate.

The value of the new buildings and additions: As the entire expense of the structures was paid out of the rents of the estate, on property belonging to the estate, it is somewhat difficult to predicate any right or claim of the defendant therefor. Besides, the referee has found that "there did not exist in the mind of the defendant Honorah Kelleher the belief that the premises belonged to her, and she well knew her husband, Michael Kelleher, died seised of the property," and, as already stated, that she erected the buildings as a business venture, and without the consent of the plaintiff. In Scott v. Guernsey, 48 N. Y. 106, which was an action for partition, certain buildings had been erected during the life estate of the tenant, with full knowledge of the limited nature of her title. The consent of the other parties in interest was not asked, and they were not invited to contribute or join in the enterprise. The court held that the buildings were erected as a venture, which it was hoped would return the investment with a profit; that the tenant was not entitled to reimbursement for the buildings erected by him; and that when the life tenant died the property as it stood, with the buildings thereon, belonged to the heirs. The same principle was declared in Cosgriff v. Foss, 152 N. Y. 104, 108, 46 N. E. 307, 308, where the court held that:

"At common law, a tenant in common, who has made permanent improvements, as distinguished from ordinary repairs, upon the common property, cannot recover from his co-tenant any part of his expenditures for that purpose, unless they were made at the request or with the consent, express or implied, of the latter."

Moneys advanced to the plaintiff: On the evidence we are of opinion that the sums were not advanced to the plaintiff as a part of her share, or as other than gifts to her. At any rate, we do not see how such a question can be litigated in this action.

The defendant also contends that she is entitled to credit for one-third of the income from the property as dower widow, and to four-fifths of the remainder of the income as life tenant in the shares of the deceased children, subject to the payment of her just proportion of the expenses and debts. The judgment provides for the payment to her from the proceeds of the sale, at her election, of a gross sum in satisfaction of her dower and estate, to be fixed by the referee, or one-third of the net proceeds as her dower, and four-fifths of the remainder as her life-estate. The defendant, on the argument of the appeal, but not at the trial or in the pleadings, contended that, "as the premises in suit cannot be partitioned without great prejudice to the parties interested, and as the life tenant does not consent to a sale, the referee should have dismissed the complaint," in accordance with the finding of the referee that the plaintiff is seised in fee simple in the premises, subject to the defendant's right of dower therein, and also to her life estate in four undivided fifths thereof. This contention is based upon section 1533 of the Code of Civil Procedure, which provides that, where two or more persons hold as joint tenants, or as tenants in common, a vested remainder or reversion, an action for partition of the real property to which it attaches may be maintained by any one or more of them, subject to the interest of the

person holding the particular estate therein; "but no sale of the premises in such an action shall be made, except by and with the consent in writing, to be acknowledged or proved and certified in like manner as a deed to be recorded, by the person or persons owning and holding such particular estate or estates." The fundamental error of this contention is that the parties do not hold as joint tenants, or as tenants in common, a "vested remainder or reversion." The plaintiff and defendant are tenants in common of the premises. The former is the owner of one undivided fifth of the premises, subject to the defendant's dower right in the premises, and also to her life estate in four undivided fifths of the same. At the termination of her estate the undivided four-fifths will descend to the plaintiff, as heir of her deceased brothers and sisters. Both plaintiff and defendant hold, therefore, as tenants in common, and in such case the rights of the parties to maintain this action are governed, not by section 1533, but by section 1532 of the Code of Civil Procedure, which permits any one or more of several tenants in common to maintain an action for partition. This section reads as follows:

"Where two or more persons hold and are in possession of real property, as joint tenants or as tenants in common, in which either of them has an estate of inheritance, or for life, or for years, any one or more of them may maintain an action for the partition of the property, according to the respective rights of the persons interested therein; and for a sale thereof, if it appears that a partition thereof cannot be made, without great prejudice to the owners."

Besides, as the defendant admitted the allegation of the complaint as to the titles and rights of the respective parties, and the referee reported in accordance therewith, and there is no exception to this finding, and the question is raised for the first time on this appeal, there is presented to this court no question for review upon that subject, but only the question of the jurisdiction of the court to entertain the proceedings. Howell v. Mills, 56 N. Y. 226. We find no errors at the trial, and the judgment must be affirmed, with costs.

Interlocutory judgment affirmed, with costs to respondent, payable out of the proceeds of sale. All concur.